FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 09, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| HEATHER C., | NO: 4:22-CV-5030-RMP |
| Plaintiff, | |
| v. | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT, without oral argument, are cross-motions for

summary judgment from Plaintiff Heather C.[1], ECF No. 10, and Defendant the

Commissioner of Social Security (the "Commissioner"), ECF No. 15. Plaintiff

seeks judicial review, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), of the

Commissioner's denial of her claims for Social Security Income ("SSI") and

---

[1] In the interest of protecting Plaintiff's privacy, the Court uses Plaintiff's first
name and last initial.

Disability Insurance Benefits ("DIB") under Titles XVI and Title II, respectively, of the Social Security Act (the "Act").  *See* ECF No. 10 at 1–2.

Having considered the parties' motions, the administrative record, and the applicable law, the Court is fully informed.  For the reasons set forth below, the Court denies Plaintiff's Motion for Summary Judgment, ECF No. 10, and grants summary judgment in favor of the Commissioner, *see* ECF No. 11.

## BACKGROUND

### *General Context*

Plaintiff applied for SSI and DIB on approximately July 2, 2019, alleging onset on June 1, 2017.  Administrative Record ("AR")[2] 16, 243–53.  Plaintiff was 36 years old on the alleged disability onset date and asserted that she was unable to work due to a combination of mental health impairments relating to childhood abuse and trauma as an adult.  AR 148–49, 381.  Plaintiff's application was denied initially and upon reconsideration, and Plaintiff requested a hearing.  *See* AR 178–79.

On April 28, 2021, Plaintiff appeared by telephone, represented by her attorney Chad Hatfield, at a hearing held by Administrative Law Judge ("ALJ") Marie Palachuk from Spokane, Washington.  AR 56.  The ALJ heard from Plaintiff as well as vocational expert Fred Cutler and medical expert Ricardo Buitrago, PhD.

---

[2] The Administrative Record is filed at ECF No. 8.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2

AR 55–89.  ALJ Palachuk issued an unfavorable decision on May 21, 2021, and the Appeals Council denied review.  AR 1–6.

### *ALJ's Decision*

As to the five-step sequential evaluation process, ALJ Palachuk found:

**Step one:** Plaintiff meets the insured status requirements of the Act through March 31, 2022.  AR 18.  Plaintiff has not engaged in substantial gainful activity since June 1, 2017, the alleged onset date.  AR 18.

**Step two:** Plaintiff has the following severe impairments that are medically determinable and significantly limit her ability to perform basic work activities: major depressive disorder; generalized anxiety disorder; borderline personality disorder; post-traumatic stress disorder ("PTSD"); cannabis use disorder; chronic pain in her back and knee, pursuant to 20 C.F.R. §§ 404.1520(c) and 416.920(c). AR 19.  In determining Plaintiff's severe impairments, ALJ Palachuk noted that the Plaintiff's "medical records contain additional psychological diagnoses at various times." AR 19.  ALJ Palachuk continued:

> The undersigned is cognizant of the substantial overlap in symptomology between different mental impairments, as well as the inherently subjective nature of mental diagnoses. These impairments generally fall under the purview of listings 12.04 and 12.06. Accordingly, the claimant's psychological symptoms and their effect on her functioning have been considered together, instead of separately, regardless of the diagnostic label attached.

AR 19.

**Step three:** The ALJ concluded that Plaintiff does not have an impairment, or combination of impairments, that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).  AR 19.

In reaching this conclusion, the ALJ addressed the "paragraph B' criteria and found that Plaintiff's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06 since Plaintiff's impairments do not result in one extreme limitation or two marked limitations in a broad area of functioning.  AR 19.  The ALJ found that Plaintiff is mildly to moderately limited in: understanding, remember, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  AR 19–20.  The ALJ found Plaintiff to be moderately to markedly limited in interacting with others.  AR 19.  The ALJ cited to portions of the record explaining her findings.  AR 19–20.

The ALJ also memorialized her finding that Plaintiff's mental impairments satisfy the "Paragraph C" criteria and found that the evidence fails to establish the presence of those criteria.  AR 20.[3]  The ALJ reasoned, "She has not engaged in

---

[3] The Paragraph C criteria requires: a "serious and persistent" mental disorder with a "medically documented history" of at least two years, and evidence of (1) ongoing medical treatment that diminishes the symptoms and signs of your disorder; and (2) marginal adjustment, meaning the claimant has "minimal capacity

consistent mental health treatment, either in the form of medications or therapy throughout the relevant period."  AR 20.

**Residual Functional Capacity ("RFC"):** The ALJ found that Plaintiff has the RFC to perform: "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except standing and walking is limited to 4 hours in an 8-hour workday; occasional postural activities; she must avoid concentrated exposure to extreme cold, vibration, and hazards. From a psychological perspective, the claimant is able to understand, remember and carryout simple routine tasks. She can maintain concentration, persistence and pace for two-hour intervals between regularly scheduled breaks. She needs a predictable environment with no more than simple changes. She can make simple work-related judgments. She can have occasional superficial interaction with the public, coworkers, and supervisors. No crowds."  AR 20.

In determining Plaintiff's RFC, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical

---

to adapt to changes in [their] environment or to demands that are not already part of [their] daily life."  20 C.F.R. § 404, Subpt. P. App. 1 §§ 12.02C, 12.04C, 12.06C.

evidence and other evidence in the record for the reasons explained in this decision." AR 1743.

**Step four:** The ALJ found that Plaintiff can perform past relevant work as an office helper.  AR 1750.

**Step five:** The ALJ found that Plaintiff has at least a high school education and was 45 years old, which is defined as a younger individual (age 18-49), on the alleged disability onset date.  AR 1750.  The ALJ found that given Plaintiff's age, education, work experience, and RFC, Plaintiff can make a successful adjustment to other work that exists in significant numbers in the national economy.  AR 1751. Specifically, the ALJ recounted that the vocational expert identified the following representative occupations that Plaintiff would be able to perform with the RFC: ticket taker (light, unskilled work, with around 26,000 jobs nationally); mail clerk (light, unskilled work, with around 23,000 jobs nationally); and storage rental clerk (light, unskilled work with around 24,000 jobs nationally).  AR 1751.  The ALJ concluded that Plaintiff had not been disabled within the meaning of the Act at any time from June 6, 2014, through the date of the ALJ's decision.  AR 1751.

## LEGAL STANDARD

### *Standard of Review*

Congress has provided a limited scope of judicial review of the Commissioner's decision.  42 U.S.C. § 405(g).  A court may set aside the

Commissioner's denial of benefits only if the ALJ's determination was based on legal error or not supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)).  "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir. 1989).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" also will be upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record, not just the evidence supporting the decisions of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).

A decision supported by substantial evidence still will be set aside if the proper legal standards were not applied in weighing the evidence and making a decision.  *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988).  Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or

nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229–30 (9th Cir. 1987).

### *Definition of Disability*

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work, but cannot, considering the claimant's age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

### *Sequential Evaluation Process*

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 416.920, 404.1520. Step one determines if he is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 416.920(a)(4)(i), 404.1520(a)(4)(i).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 416.920(a)(4)(ii), 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with listed impairments acknowledged by the Commissioner to be so severe as to preclude any gainful activity. 20 C.F.R. §§ 416.920(a)(4)(iii), 404.1520(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work that he has performed in the past. If the claimant can perform her previous work, the claimant is not disabled. 20 C.F.R. §§ 416.920(a)(4)(iv), 404.1520(a)(4)(iv). At this step, the claimant's RFC assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy considering her residual functional capacity and age, education, and past

work experience.  20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once the claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation.  *Meanel*, 172 F.3d at 1113.  The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which the claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ISSUES ON APPEAL

The parties' motions raise the following issues regarding the ALJ's decision:

1. Did the ALJ improperly rely on the erroneous testimony of the medical expert?

2. Did the ALJ erroneously evaluate two medical source opinions in the record?

3. Did the ALJ erroneously assess Plaintiff's subjective symptom complaints?

4. Did the ALJ err at step five of the sequential analysis?

/ / /

/ / /

*Medical Opinions*

Plaintiff argues that the ALJ improperly relied on unsupported testimony of testifying medical expert Ricardo Buitrago, Psy.D. and erroneously evaluated the opinions of examining psychiatrist Rahul Khurana, MD and treating nurse practitioner Sarah Severin, DNP-PMHNP.  ECF Nos. 10 at 2–3; 12 at 2–12.  The Commissioner counters that the ALJ reasonably assessed the persuasiveness of the medical opinions based on their supportability and consistency with the record.  ECF No. 11 at 9–20.

The regulations that took effect on March 27, 2017, provide a new framework for the ALJ's consideration of medical opinion evidence and require the ALJ to articulate how persuasive she finds all medical opinions in the record, without any hierarchy of weight afforded to different medical sources.  *See* Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017).  Instead, for each source of a medical opinion, the ALJ must consider several factors, including supportability, consistency, the source's relationship with the claimant, any specialization of the source, and other factors such as the source's familiarity with other evidence in the claim or an understanding of Social Security's disability program.  20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

Supportability and consistency are the "most important" factors, and the ALJ must articulate how she considered those factors in determining the persuasiveness

of each medical opinion or prior administrative medical finding.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  With respect to these two factors, the regulations provide that an opinion is more persuasive in relation to how "relevant the objective medical evidence and supporting explanations presented" and how "consistent" with evidence from other sources the medical opinion is.  20 C.F.R. §§ 404.1520c(c)(1) 416.920c(c)(1).  The ALJ may explain how she considered the other factors, but is not required to do so, except in cases where two or more opinions are equally well-supported and consistent with the record.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2), (3).  Courts also must continue to consider whether the ALJ's finding is supported by substantial evidence.  *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").

Prior to revision of the regulations, the Ninth Circuit required an ALJ to provide clear and convincing reasons to reject an uncontradicted treating or examining physician's opinion and provide specific and legitimate reasons where the record contains a contradictory opinion.  *See Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017).  However, the Ninth Circuit has held that the Social Security regulations revised in March 2017 are "clearly irreconcilable with [past Ninth Circuit] caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."  *Woods v.*

1    *Kijakazi*, No. 21-35458, 2022 U.S. App. LEXIS 10977, at *14 (9th Cir. Apr. 22,

2    2022).  The Ninth Circuit continued that the "requirement that ALJs provide

3    'specific and legitimate reasons' for rejecting a treating or examining doctor's

4    opinion, which stems from the special weight given to such opinions, is likewise

5    incompatible with the revised regulations."  *Id*. at *15 (internal citation omitted).

6        Accordingly, as Plaintiff's claim was filed after the new regulations took

7    effect, the Court refers to the standard and considerations set forth by the revised

8    rules for evaluating medical evidence.  *See* AR 16.

9        ### **Dr. Buitrago**

10       Plaintiff argues that the ALJ erred in finding medical expert Ricardo Buitrago,

11   PhD's testimony "very persuasive" because: "(1) Dr. Buitrago did not adequately

12   review the record, as he stated that he did not see any treatment notes, medical

13   source statements from treating providers, or consultative examinations;

14   (2) Dr. Buitrago falsely asserted that the only abnormal mental status exam findings

15   were in June 2020; and (3) the ALJ dismissed him from the hearing prior to the

16   claimant's testimony, which directly rebutted several of his statements."  ECF No.

17   10 at 10 (citing AR 61–63); *see also* ECF No. 12 at 1–2 (citing AR 61–64).

18       The Commissioner responds that the ALJ reasonably found Dr. Buitrago's

19   opinion that Plaintiff could: understand and engage in simple repetitive tasks

20

21

1    independently; maintain concentration and attention for simple tasks; make simple

2    work-related decisions; and have occasional contact with coworkers, supervisors,

3    and the general public. ECF No. 11 at 10 (citing AR 61–62).  The Commissioner

4    argues that Dr. Buitrago's opinion "was supported by his record review and

5    explanation, as well as his ability to defend his opinion upon questioning by

6    Plaintiff's counsel." *Id.* (citing AR 25).  The Commissioner contends that the

7    following records amount to substantial evidence supporting Dr. Buitrago's opinion:

8    Plaintiff's treatment records documenting her giving riding lessons, breeding dogs,

9    and otherwise caring for several dogs while also occupied with childcare; Plaintiff's

10    medical record reflecting "low complexity medication management, even when

11    restarting medication"; and "gaps in treatment with pervasive marijuana use." *Id.* at

12    12 (citing AR 25, 60–61, 64–65, 698, and 703).

13        Dr. Buitrago testified that he reviewed Plaintiff's medical records and saw

14    "low complexity med management for about 16 months and then no – no med

15    management for eight months until just – again recently she was prescribed a dose of

16    Xanax." AR 61.  Dr. Buitrago continued, "I didn't see any significant engagements

17    or participation in psychological treatment services . . . individual therapy, group

18    therapy, any – any type of service.  I did not see any consultative evaluations to

19    review.  I did not see any psychiatric hospitalizations due to psychiatric issues.  I did

20    not see any medical source statements from any direct service provider.  I did not see

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

1  any substance abuse treatment records, nor did I see any vocational rehab attempts."

2  AR 61.  Dr. Buitrago opined that, with active marijuana use, Plaintiff has mild to

3  moderate limitations in understanding, remembering, and applying information; mild

4  to moderate limitation in concentrating, persisting, and maintaining pace; mild to

5  moderate limitations in adapting and managing oneself; and moderate to marked

6  limitations in interacting with others.  AR 61.

7       ALJ Palachuk found Dr. Buitrago's opinions to be "very persuasive" for the

8  following reasons:

9      In terms of supportability, Dr. Buitrago reviewed the entire medical
    record, gave a reasonable explanation of his opinion, and was available

10      for questioning at the hearing. In terms of consistency, Dr. Buitrago's
    opinion is well supported by longitudinal record showing low

11      complexity medication management through her primary care provider
    for approximately 16 months, and no medication management for

12      approximately 8 months until recently when she was started on [X]anax
    for anxiety. His opinion is also consistent with reports in the medical

13      evidence indicating she does horse riding lessons, breeds dogs, and
    cares for seven dogs.

14  AR 25 (citing AR 698, 703–04).

15       With respect to Dr. Buitrago's statement that there was no medical source

16  statement from any direct service provider, Plaintiff cites the Court to an October 22,

17  2019 letter from primary care provider Whitney Fix-Lanes, DO stating her opinion

18  that Plaintiff should "not be required to participate in any group activities" due to her

19  anxiety.  *See* ECF No. 10 at 11 (citing AR 20).  The letter from Dr. Fix-Lanes is one

20  paragraph and concludes, without any discussion, that Plaintiff is unable to tolerate

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

1    being around groups of new people.  AR  731.  It is not apparent to the Court that

2    Dr. Buitrago must have interpreted the letter to be a medical source statement from a

3    direct service provider.  More importantly, the ALJ found Dr. Fix-Lanes's opinion to

4    be persuasive and limited Plaintiff's interactions with others, including crowds, in

5    the RFC.  *See* AR 20, 25–26.  In addition, Dr. Buitrago opined that Plaintiff is

6    moderately to markedly limited in interacting with others.  AR 61.  Consequently,

7    even if the Court were to find error related to Dr. Buitrago finding no relevant

8    medical source statements from a direct service provider, the error would be

9    harmless given Dr. Buitrago's consideration of, and the ALJ's treatment of, the

10    opinion that Plaintiff offers to contradict Dr. Buitrago's testimony.

11         Plaintiff also asserts that Dr. Buitrago's findings were "deficient" because

12    they overlooked abnormal mental status exam findings and did not take account of

13    the claimant's testimony, which the ALJ heard after dismissing Dr. Buitrago from

14    the hearing.  ECF No. 10 at 10.  Plaintiff's counsel asked Dr. Buitrago whether he

15    had noted in the record that Plaintiff had reported being too anxious to leave her

16    house and had trouble attending therapy as a result, and whether Dr. Buitrago had

17    noted "many abnormal mental status examinations in the record."  AR 63–64.  Dr.

18    Buitrago responded negatively to both questions and cited to evidence in Plaintiff's

19    medical record to support his lengthy response.  AR 64.  Plaintiff indicates in her

20    briefing that Dr. Buitrago's response was erroneous because Plaintiff testified, after

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16

Dr. Buitrago had been excused from the hearing, that she has missed appointments due to anxiety and agoraphobia.  ECF No. 12 at 3 (citing 68–70).  However, as the factfinder in the case, it is the ALJ's role to resolve inconsistencies in the record, such as between Plaintiff's testimony and the opinion of Dr. Buitrago.  *See* 42 U.S.C. § 405(g).

The remainder of Plaintiff's arguments further ask the Court to reweigh the evidence.  *See* ECF No. 12 at 3 (maintaining that the record can be interpreted as both demonstrating a willingness by Plaintiff to seek treatment and evidencing that any failure to seek treatment results from Plaintiff's inability to leave her house due to her impairments).  Plaintiff's counsel questioned Dr. Buitrago regarding these purported conflicts, and Dr. Buitrago cited to substantial evidence in the record to support his response.  *See* AR 63–64.  The Court finds no error in the medical expert's testimony or the ALJ's reliance on it.

### ***Dr. Khurana***

Plaintiff argues that the ALJ erroneously discounted the disabling opinion of examining psychiatrist Dr. Khurana.  ECF No. 10 at 18–19.  Plaintiff maintains that the ALJ's reasoning that Dr. Khurana's assessed limitations are not supported by his mini-mental status examination findings is conclusory and clear legal error.  *Id.* at 19 (citing AR 557).  Plaintiff asserts that "when Dr. Khurana's opinion is considered for its supportability and consistency with the longitudinal treatment records, it

becomes readily apparent that the ALJ harmfully erred in rejecting the disabling

findings contained therein."  *Id.*

The Commissioner responds that the ALJ correctly found Dr. Khurana's

opinion unsupported by his "abbreviated mini-mental status examination findings"

because Dr. Khurana "did not specify how any objective evidence informed his

assessment."  ECF No. 11 at 18 (citing AR 25; 20 C.F.R. §§ 404.1520c(c)(1),

416.920c(c)(1)).  The Commissioner cites to the ALJ's discussion earlier in the

decision that Dr. Khurana's examination found Plaintiff "had coherent and directed

thought process, mostly normal speech, with a score of 23 out of 28 points on

cognitive testing."  *Id.* (citing AR 19, 557).  The Commissioner also maintains that

the ALJ reasonably discounted Dr. Khurana's opinion for relying heavily on

Plaintiff's subjective reports, when the ALJ found those reports unreliable.  *Id.*

(citing AR 25).  Lastly, the Commissioner maintains that any conclusions that a

claimant is unable to perform regular or continuing work are for the Commissioner,

not a practitioner, to make.  *Id.* at 19 (citing 20 C.F.R. §§ 404.1520b(c)(3)(i),

416.920b(c)(3)(i)).

On June 10, 2020, Dr. Khurana evaluated Plaintiff for her disability claims

and noted that Plaintiff "has not had good response thus far to treatment including

medications & psychotherapy" and opined that "[e]ven with more treatment,

symptoms are likely to be lifelong, & chronically disabling both socially &

occupationally."  AR 558 (punctuation as in original).  Dr. Khurana concluded:

> I believe that the complexity & severity of her medical & psychiatric
> illnesses makes it unrealistic for patient to ever work in any meaningful,
> long term capacity.
>
> Patient has moderate to marked difficulty with simple instructions.
> Work-related judgments and ability to carry out more complex
> instructions are severely impaired. Pt's understanding is with mild to
> moderate impairment. Pt has severe disability for sustained
> concentration & persistence. These illnesses also make typical social
> interactions (with public, supervisors, or coworkers) in the work
> environment severely impaired. Patient would also have marked to
> severe difficulty responding to changes in the work routine.

AR 558.

ALJ Palachuk found Dr. Khurana's[4] opinion to be "unpersuasive" because:

(1) Dr. Khurana's opinion that Plaintiff has moderate to marked difficulty with

simple instructions and a "severe disability for sustained concentration and

persistence" were not supported by Dr. Khurana's "abbreviated mini-mental status

examination findings"; (2) Dr. Khurana's remaining marked to severe limitations

appear to rely heavily on Plaintiff's subjective report of symptoms and limitations;

and (3) Dr. Khurana's opinions on the ultimate issue of disability that is reserved to

the Commissioner are "inherently neither valuable nor persuasive."  AR 25 (citing

AR 558).

---

[4] The ALJ wrote Dr. Khurana's surname as "Kurana."  AR 25.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 19

1    Dr. Khurana conducted an abbreviated mini-mental status examination and

2    observed Plaintiff to appear "sad looking, attentive, communicative, casually

3    groomed, and looks unhappy."  AR 557.  Dr. Khurana further observed Plaintiff to

4    exhibit normal speech, intact language skills and judgment, coherent and linear

5    thought, and normal insight.  AR 557.  However, Dr. Khurana noted that Plaintiff's

6    presentation was "sad & totally tearful with constricted & congruent affect (with 1

7    brief episode of laughter)."

8    Dr. Khurana does not indicate what records support his opinions, and his

9    observation that Plaintiff presented with a tearful and constricted affect does not

10    support the conclusion that Plaintiff's is "severely impaired" in making work-

11    related judgments and carrying out "more complex instructions," and in navigating

12    "typical social interactions (with public, supervisors, or coworkers) in the work

13    environment[.]"  AR 557–58.  The ALJ reasonably relied on a disconnect between

14    Dr. Khurana's objective findings and his opinions to find those opinions less

15    persuasive.  *See* 20 C.F.R. §§ 404.1520c(c)(1) 416.920c(c)(1).  Moreover, the ALJ

16    reasonably determined that a physician's opinion that Plaintiff is disabled was

17    unpersuasive.  *See McLoed v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) ("The law

18    reserves the disability determination to the Commissioner."); *Taylor v. Barnhart*,

19    83 Fed. App'x 347, 349 (2d Cir. 2003) (physician's opinion that a claim is disabled

20    is "not entitled to any weight, since the ultimate issue of disability is reserved for

21

the Commissioner.").  The Court finds no error in the ALJ's treatment of Dr.

Khurana's opinion on these two bases.

With respect to whether the ALJ could discount Dr. Khurana's reliance on

Plaintiff's subjective reports, the Court defers its conclusion until analyzing

whether the ALJ erred in discounting Plaintiff's subjective testimony.  *See Smith v.*

*Berryhill*, 752 Fed. App'x. 473, 475 (9th Cir. 2019) (finding that an "ALJ may

usually reject a physician's opinion when it lacks support from objective medical

findings or relies upon the properly discounted subjective reports of a claimant.").

### *Nurse Practitioner Severin*

Plaintiff maintains that the ALJ discounted Nurse Practitioner Severin's

opinions on impermissible grounds, namely because she was a "'new provider' who

only 'recently evaluated and started treating the claimant with psychotropic

medication.'"  ECF No. 10 at 14 (citing AR 26).  Plaintiff further maintains that the

ALJ's treatment of the opinion is not supported by substantial evidence because it

does not account for Nurse Practitioner Severin's explanation, misstates Plaintiff's

medication history, and mischaracterizes the record evidence. *Id.*  Plaintiff maintains

that the ALJ did not explain how Plaintiff's presentation at her appointments, and

her medication regimen, were inconsistent with the limitations that Nurse

Practitioner Severin assessed. *Id.* at 15–16.  Plaintiff discusses records that indicate

that Plaintiff presented with complaints or symptoms of psychological issues and

1    ineffectiveness of psychiatric medications.  *Id.* at 16–17 (citing AR 443, 507, 550–

2    51, 576–77, 581, 585, 664, 703–04, and 716).

3         The Commissioner responds that the ALJ's reasons for discounting Nurse

4    Practitioner Severin's opinion adhered to the relevant rules, as revised in March

5    2017, and were supported by substantial evidence.  ECF No. 11 at 14.  The

6    Commissioner argues that the ALJ legitimately considered that Nurse Practitioner

7    Severin "had only started seeing Plaintiff in March 2021, just two months before the

8    ALJ's decision."  *Id.* (adding "She started Plaintiff on a temporary psychiatric

9    medication (Xanax) and planned to start additional medication once she got more

10   information about Plaintiff's treatment history.") (citing AR 16, 26, 704, 708, and

11   711).  The Commissioner also maintains that substantial evidence supports that

12   Plaintiff's "primary care presentation during the relevant period included many

13   findings of normal mood and affect."  *Id.* at 15 (citing AR 19–20, 22, 26, 406, 470,

14   485, 488, 491, 494, 497, 610, 618, 626, and 629).

15        In a medical source statement dated April 27, 2021, Nurse Practitioner

16   Severin opined that Plaintiff has moderate or marked mental limitations in nineteen

17   different mental activities related to work.  AR 732–35.  Nurse Practitioner Severin

18   further opined that Plaintiff would be off-task and unproductive over thirty percent

19   of the time during a forty-hour-per-week schedule and miss four or more days of

20

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 22

work per month.  AR 735.  In addition to completing the check-box form, Nurse

Practitioner Severin added the following narrative:

> At this time [Plaintiff] has undergone and been a victim of severe
> trauma that has significantly impacted her daily functioning[.] Getting
> her to sit calmly in my office [and] help her organize her thoughts have
> been difficult. I have ruled out substance use, her utox was negative.
> She experiences debilitating anxiety that we are currently managing
> with medications[.] She was taking Geodon but due to side effects has
> been switched to Vraylar. She is also on Xanax for panic attacks [and]
> the goal is to start counseling/therapy[.] She may eventually get to a
> place where she can manage a part time job, but right now psychiatric
> stability [and] low stress is essential[.]

AR 735.

The ALJ found that Nurse Practitioner Severin's opinion was "not

persuasive." AR 26.  ALJ Palachuk wrote:

> Nurse Severin opined the claimant had moderate to marked limitations.
> She opined the claimant would likely miss more than 4 or more days of
> work per month. This opinion is not persuasive. In terms of
> supportability, Nurse Severin is a new provider who only recently
> evaluated and started treating the claimant with psychotropic
> medications. In March 2021, Nurse Severin deferred medications until
> she provided a medication list from her primary care provider. The
> marked limitations in this report are inconsistent with the claimant's
> presentation throughout primary care visits at 5F, 7F, and 14F, and her
> history of low complexity medication management.

AR 26 (citing AR 711, 732–35).  Earlier in the decision, ALJ Palachuk cited to

specific pages of Exhibits 5F, 7F, and 14F indicating that Plaintiff sometimes

presented with complaints or symptoms of psychological impairments, and

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 23

regularly presented with unremarkable psychiatric examination findings.  *See* AR 20, 22 (citing 409, 414, 426, 430, 435, 439, 443, 485–86, 491, 494, and 497).

As an initial matter, the length of Nurse Practitioner Severin's treatment relationship with Plaintiff is an appropriate consideration for the ALJ in determining the persuasiveness of Nurse Practitioner Severin's opinion under the operative regulations.  *See* 20 C.F.R. §§ 404.1520c(c)(3), 416.920c(c)(3). Furthermore, the Court finds ample record support for the ALJ's reasoning that Plaintiff's unremarkable presentation at primary care visits and her history of low complexity medication management is inconsistent with the marked limitations that Nurse Practitioner assessed.  Although the ALJ cited broadly to "5F, 7F, and 14F" in the paragraph addressing Nurse Practitioner Severin's opinion, the ALJ cites earlier in her decision to particular documents within those exhibits that support that Plaintiff's psychiatric examination findings often were within normal limits during the relevant period.  *See* AR 20, 22 (citing 409, 414, 426, 430, 435, 439, 443, 485–86, 491, 494, and 497).

The Court does not find error in ALJ Palachuk's evaluation of the persuasiveness of Nurse Practitioner Severin's opinion.

### Subjective Symptom Testimony

Plaintiff maintains that the ALJ failed to offer clear and convincing reasons for rejecting her disabling allegations.  ECF No. 10 at 19–20.  Plaintiff argues that

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 24

1  the ALJ mischaracterized the record, ignored treatment notes indicating severe

2  symptoms, discounted Plaintiff's subjective complaints based on waxing and waning

3  symptoms, penalized Plaintiff for failing to seek treatment when her anxiety

4  frequently prevents her from leaving home, and overstated Plaintiff's activities, as

5  Plaintiff requires assistance with childcare, rode horses only sporadically, and cared

6  for only one dog and her litter of puppies.  *Id.* at 20 (citing AR 21–24, 72–77).

7       The Commissioner responds that substantial evidence supports the ALJ's

8  determination that while Plaintiff experienced severe impairments, her records

9  undermine the reliability of Plaintiff's subjective complaints.  ECF No. 11 at 4.  The

10  Commissioner maintains that Plaintiff's records support that "[a]lthough Plaintiff

11  claimed neither medication nor counseling had improved her mental impairments, . .

12  . she had benefitted from both forms of treatment."  *Id.* at 2. The Commissioner also

13  asserts that the record shows that Plaintiff appeared an many medical appointments,

14  and unaccompanied.  *Id.*  The Commissioner further highlights that "even during

15  periods of lapsed treatment and active marijuana use, [Plaintiff] reported being

16  engaged in farm work that involved both dog breeding and giving horse-riding

17  lessons for profit."  *Id.*

18       In deciding whether to accept a claimant's subjective pain or symptom

19  testimony, an ALJ must perform a two-step analysis.  *Smolen v. Chater*, 80 F.3d

20  1273, 1281 (9th Cir. 1996).  First, the ALJ must evaluate "whether the claimant has

21

presented objective medical evidence of an underlying impairment 'which could

reasonably be expected to produce the pain or other symptoms alleged.'"

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v.

Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  Second, if the first test is met and there

is no evidence of malingering, "the ALJ can reject the claimant's testimony about

the severity of her symptoms only by offering specific, clear and convincing reasons

for doing so." *Smolen*, 80 F.3d at 1281.

There is no allegation of malingering in this matter.  The ALJ summarized

Plaintiff's hearing testimony and found that Plaintiff's medically determinable

impairments reasonably could be expected to cause the alleged symptoms.  AR 21.

Plaintiff testified that her attempts at counseling and psychiatric medication had not

successfully relieved her mental health symptoms.  AR 22, 381–83, 572.  However,

the ALJ cited to treatment records indicating that Plaintiff was better able to regulate

her emotions as her therapy sessions progressed and that Plaintiff's symptoms

worsened when she ceased her medications.  AR 23 (citing AR 534, 538, 550, 572,

584, and 586); *see also* AR 585–86 (indicating that Plaintiff reported to provider that

she had stopped taking her medications and was avoiding going to her "psych . . .

due to her psych not offering in person appointments for the past month and only

having telephone visit per patient).  The ALJ also documented the discrepancies

between Plaintiff's hearing testimony denying that she bred dogs or was able to do

anything related to horses and a therapy record from the month before the hearing recording that Plaintiff "[r]eports not working a job, applying for SSI, but is currently doing farming work, does riding lessons, and breeding dogs." *See* AR 23, 72, 701–03. The Court finds that the ALJ offered specific, clear, and convincing reasons for discounting Plaintiff's testimony, supported by substantial evidence in the record.

The Court finds no error based on the ALJ's treatment of Plaintiff's subjective symptom testimony and, therefore, denies summary judgment to Plaintiff, and grants summary judgment to Defendant, on this ground. Furthermore, having found that the ALJ did not err in discounting Plaintiff's subjective complaints, the Court further finds that Plaintiff's outstanding argument regarding the ALJ's treatment of Dr. Khurana's opinion, that the ALJ erroneously found the opinion unpersuasive due to its reliance on Plaintiff's self-reports, does not amount to legal error.

### Step Five

Plaintiff contends the ALJ erred at step five because the vocational expert testified that limitations similar to those contained in the allegedly "improperly rejected medical opinions, and supported by substantial evidence of record, testimony, and longitudinal treatment notes" would preclude Plaintiff from retaining competitive employment. ECF No. 12 at 12. The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record that reflect

1    all of a claimant's limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir.

2    2001). The ALJ is not bound to accept as true the restrictions presented in a

3    hypothetical question propounded by a claimant's counsel. *Osenbrock*, 240 F.3d at

4    1164. The ALJ may accept or reject these restrictions if they are supported by

5    substantial evidence, even when there is conflicting medical evidence. *Magallanes v.*

6    *Bowen*, 881 F.2d 747, 756 (9th Cir. 1989).

7        Plaintiff's argument assumes that the ALJ erred in considering medical

8    opinion evidence and Plaintiff's subjective symptom testimony. As discussed

9    above, the ALJ's assessment of the medical source opinions and Plaintiff's

10    testimony was appropriate. Therefore, the RFC and hypothetical contained the

11    limitations that the ALJ found credible and supported by substantial evidence in the

12    record. The ALJ's reliance on testimony that the vocational expert gave in response

13    to the hypothetical was proper. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217–18

14    (9th Cir. 2005). The Court denies Plaintiff's Motion for Summary Judgment on this

15    final ground.

## CONCLUSION

17        Having reviewed the record and the ALJ's findings, this Court concludes that

18    the ALJ's decision is supported by substantial evidence and free of harmful legal

19    error. Accordingly, **IT IS HEREBY ORDERED** that:

20        1.    Plaintiff's Motion for Summary Judgment, **ECF No. 10**, is **DENIED**.

21

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 28

2.    Defendant's Motion for Summary Judgment, **ECF No. 11**, is

**GRANTED**.

4.    Judgment shall be entered for Defendant.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this

Order, enter judgment as directed, provide copies to counsel, and **close the file** in

this case.

**DATED** January 9, 2023.


_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
Senior United States District Judge